IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARA J. WILLIAMS,                          )     Civil No.: 6:16-cv-00439-JE
                                           )
                    Plaintiff,             )     OPINION & ORDER
            v.                             )
                                           )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
                                           )
                    Defendant.             )
_____)

Richard F. McGinty
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, OR 97301

        Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Kathryn A. Miller
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

_____

JELDERKS, Magistrate Judge:

Sara Jane Williams ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the reasons that follow, the Commissioner's decision is reversed and this case is remanded for immediate calculation and payment of benefits.

## Procedural Background

Plaintiff filed her application for DIB and SSI on June 24, 2011, alleging disability beginning September 23, 2010. Tr. 233, 240. Plaintiff's claims were initially denied on October 11, 2011, and those denials were not appealed. Tr. 137, 141. On May 7, 2012, Plaintiff filed new claims for SSI and DIB, again alleging an onset date of March 23, 2010. Tr. 244, 248. After Plaintiff's new claims were denied initially and on reconsideration, a hearing was convened on October 25, 2013, before Administrative Law Judge ("ALJ") Andrew Grace. Tr. 33–75, 145, 149. On Plaintiff's request, a supplemental hearing was held on April 16, 2014. Tr. 76–85. The ALJ issued a decision on May 2, 2014, finding Plaintiff not disabled. Tr. 17–32. The decision became the final decision of the Commissioner on January 13, 2016, when the Appeals Council denied Plaintiff's subsequent request for review. Tr. 1–3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Background

Born February 19, 1979, Plaintiff was 31 years old on the initial alleged onset date. Tr. 90, 244. Plaintiff has a 12th grade education and has completed some community college coursework. Tr. 38–43. She has past relevant work as a caregiver, sales attendant, and cashier.

Tr. 24. Plaintiff alleges disability due to fibromyalgia, chronic pain, anxiety, posttraumatic stress disorder ("PTSD"), and obesity. Tr. 90, 100, 113, 125.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in Tackett v. Apfel, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations. 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment in the listings, the Commissioner's evaluation of the claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At steps one through four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**The ALJ's Decision**

At the first step of the disability analysis, the ALJ found Plaintiff met the insured status requirements through September 30, 2015, and had not engaged in substantial gainful activity since the alleged onset date, March 23, 2010. Tr. 19.

At the second step, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, obesity, migraines, asthma, PTSD, anxiety, panic disorder, probable sleep apnea, and right knee degenerative joint disease. Tr. 19.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings. 20 C.F.R. Part 404, Subpart P, App. 1; Tr. 19–20.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch and crawl; frequently balance; frequently reach, handle, and feel bilaterally; should avoid concentrated exposure to hazards; should have no public contact, occasional superficial contact with coworkers and occasional contact with supervisors; and is limited to moderate noise level, defined as the noise level of a department store or grocery store.

Tr. 21.

At the fourth step of the disability analysis, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 24.

At the fifth step, the ALJ found that Plaintiff retained the functional capacity required to perform jobs that existed in significant numbers in the national economy. Tr. 24. Relying on the VE's testimony, the ALJ cited addresser and document preparer as examples of work Plaintiff could perform. Tr. 25. Based upon the conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act, from March 23, 2010, through the date of his decision. Tr. 25.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at step five of the disability analysis process. Tackett, 180 F.3d at 1099.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039–40.

## Discussion

Plaintiff contends that the ALJ: (1) failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony; (2) improperly rejected the medical opinion of Dr. Wang; (3) improperly credited examining physician Dr. Markus' opinion over treating physician Dr. Wang's opinion; (4) failed to provide germane reasons for rejecting Ms. Madina Williams' lay testimony; and (5) improperly evaluated Plaintiff's obesity.

## I. Plaintiff's Credibility

Plaintiff alleges that the ALJ improperly discounted her testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so." Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). Pursuant to SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p), the ALJ is no longer tasked with making an overarching credibility determination, and must assess instead whether a

claimant's subjective symptom statements are consistent with the record as a whole. The ALJ's decision in this case was issued well before SSR 16-3p became effective and there is an absence of binding precedent interpreting this new ruling or addressing whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *4 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retrospectively to a 2013 ALJ decision).

However, SSR 16-3p is a clarification of sub-regulatory policy, rather than a new policy. SSR 16-3p; also compare SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). In Kimble v. Berryhill, No. 3:15-cv-01641-JE, 2017 WL 3332256, at *7–8 (D. Or. Aug. 4, 2017), I recently held that, for this reason, retroactive application of the new SSR is appropriate. See Smolen, 80 F.3d at 1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law") (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993)) (because regulations were intended to incorporate prior Social Security Administration policy, they should be applied retroactively). The new SSR clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. In other words, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p. Rather, "[a]djudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." SSR 16-3p. Thus, "it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered . . . .'" SSR 16-

3p. Instead, the finding "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "[o]ther factors concerning [the individual's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii). If substantial evidence supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff testified that she has pain from her neck into her back, in her arms and hands, as well as from her hips down her legs. Tr. 44. Plaintiff also reported that she experiences numbness in her hands and feet. Id. The pain in her hands makes it difficult for Plaintiff to hold things, and she testified that she often drops things. Tr. 62. Additionally, Plaintiff's hands get too tired while reading a book so she uses a computer program that reads to her. Tr. 64. She usually wears flip-flops so that she does not have to tie her shoes. Tr. 329. Plaintiff reported that her ability to concentrate and follow instructions is inhibited by her anxiety. Tr. 332. Plaintiff explained that she suffers from panic attacks and does not sleep well, which causes fatigue. Tr. 52. Plaintiff also noted that she can only sit in one position for 5-20 minutes. Tr. 61. Plaintiff testified that on good days she spends 4-6 hours lying down and on bad days she spends 8-10 hours lying down. Tr. 58. Furthermore, there are days when Plaintiff is in so much pain that she has to lie down the entire

day and is unable to get anything done due to her impairments. Tr. 46. She indicated that she

needs a rest after 30 minutes to an hour of activity and she has to take lots of breaks. Tr. 311.

Plaintiff reported that she misses her classes a couple of times per month. Tr. 66. She also

explained that she is late to class three-quarters of the time because it takes her so long to walk

from the parking lot to her class. Tr. 67.

## A. Lack of Medical Evidence

The ALJ found that there was a lack of medical evidence supporting Plaintiff's claims,

concluding that "[e]vidence supports a finding that the claimant has *some* limitations related to

pain and other symptoms." Tr. 22 (emphasis added). The ALJ relied on the following medical

evidence in discrediting plaintiff's subjective symptom testimony: October 2010 x-rays showed

only slight narrowing of the medial compartment; "MRI of the lumbar spine showed very mild

disc desiccation at L4-5 and L5-S1 with very minimal facet hypertrophy at L5-S1"; no "stenosis

or neural impingement was identified"; and she was once informed that "due to obesity, she was

likely to have chronic low back pain and that in the long term her pain would be decreased with

weight loss." Tr. 22, 441, 678, 693.

Plaintiff argues that although the ALJ listed the above findings, the ALJ never explained

why those findings supported "some limitations" and not other limitations. A general assertion

that the claimant is not credible is insufficient; the ALJ must specify which of Plaintiff's claims

are not credible and what evidence supports the finding that Plaintiff lacks credibility. See Dodrill

v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The Commissioner argues that the ALJ does not need

to cite "magic words" as long as the "reviewing court can draw specific and legitimate inferences

from his findings." Def.'s Br. at 9 (citing Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir.

1989)). The Commissioner also asserts that the ALJ was sufficiently specific because the ALJ

stated the evidence supported a finding that claimant had "some limitations" and then set "out in

detail the generally mild unremarkable findings that supported only *some* limitation." Def.'s Br. at 9; Tr. 22. Nevertheless, an assertion that the evidence supports a finding of "some limitations" followed by a list of clinical findings is not sufficiently specific. Dodrill, 12 F.3d at 918 (The ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."). Here, the ALJ failed to explain which testimony was not credible.

The ALJ also relied on Dr. Markus' findings that Plaintiff had normal motor strength in the upper and lower extremities and no sensory deficits. Again, it is unclear how these findings contradict any of Plaintiff's claims. Plaintiff did not allege sensory deficits and although Plaintiff claimed that pain in her arms inhibited her ability to hold and carry objects, she never claimed that she had less than normal motor strength. The ALJ also noted that Dr. Markus reported all 18 classical trigger points for fibromyalgia were positive, but 5 out of 7 control points were also positive. Tr. 22, 714. The ALJ's interpretation of these findings is unclear. It appears that the ALJ was implying that the positive control points undermine Plaintiff's claims of fibromyalgia; however, such an assertion is not supported by the record because—despite the positive control points—Dr. Markus still diagnosed Plaintiff with fibromyalgia. Tr. 714.

The ALJ also noted that Plaintiff is prescribed an inhaler but there was no evidence of asthma exacerbations. Tr. 668. Plaintiff testified that she was diagnosed with asthma as a child but currently she is not bothered by it; therefore, the fact that there is no evidence of asthma exacerbations is consistent with Plaintiff's testimony. Tr. 55.

Finally, the ALJ relied on Plaintiff's March 5, 2012, report to her doctor that "she was feeling well with regard to her fibromyalgia. Tr. 22, 481. The ALJ cited to only one instance in which Plaintiff stated her fibromyalgia was doing well, and failed to address Plaintiff's long history of suffering from fibromyalgia. Tr. 396, 446, 448, 458, 467–68, 602–03, 631, 667, 670–71, 674–75, 682, 714. In fact, two weeks after Plaintiff stated that she was doing well with

fibromyalgia, she returned to her doctor complaining of pain due to fibromyalgia and Dr. Wang referred her to a pain management clinic. Tr. 448. The ALJ may not merely cherry-pick isolated inconsistencies with the objective medical record to discount a plaintiff's entire symptom testimony. Garrison, 759 F.3d at 1017 (citing Holohan v. Massanari, 246 F. 3d 1195, 1205 (9th Cir. 2001)) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Thus, the single instance in which Plaintiff reported her fibromyalgia was doing well is not a clear and convincing reason to discredit the entirety of her testimony.

To support the ALJ's finding that Plaintiff's subjective symptom testimony was not credible due to a lack of medical evidence, the Commissioner argues that "[a]n EMG study likewise revealed L5 radiculopathy without evidence of active denervation." Def's Br. at 8; Tr. 608. The Commissioner's argument fails for two reasons. First, the Commissioner's assertion constitutes an impermissible *post hoc* rationalization, as the ALJ did not rely on the EMG study. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (A reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.") (internal citations omitted). Second, the results of the study do not undermine Plaintiff's claims because the EMG revealed "the left lower extremity demonstrated *significantly increased polyphasia* in the L5 related muscles distally consistent with L5 radiculopathy," and Plaintiff was referred to a neurosurgeon to treat the L5 radiculopathy. Tr. 608, 666. Rather than undermine Plaintiff's testimony, the EMG study appears to support Plaintiff's claims. Therefore, the purported lack of medical evidence is not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

**B. Conservative Treatment**

The ALJ further supported his adverse credibility finding with his determination that Plaintiff received merely conservative treatment. Tr. 22. The ALJ relied in part on Plaintiff never having sought treatment for sleep apnea. Tr. 22. Notably, Dr. Wang merely reported that Plaintiff *probably* had sleep apnea, and there is no evidence anywhere in the record of a medical provider ever diagnosing Plaintiff with sleep apnea. Tr. 722. Furthermore, Dr. Wang first noted that Plaintiff probably had sleep apnea in November of 2013, and the administrative record only contains Plaintiff's medical records through 2013; as such, it is not clear whether Plaintiff subsequently sought treatment. Tr. 722. Thus, Plaintiff's alleged failure to seek treatment for sleep apnea does not undermine her subjective symptom testimony.

The ALJ also found that Plaintiff was prescribed Topiragen for migraines in July, 2012, but in October of that same year, she reported that she was not taking the medication and "[t]here is no evidence the claimant ever took the prescription medication and recent treatment records do not reflect any complaints of migraines." Tr. 22, 602, 667. Plaintiff did not take the prescribed Topiragen for her migraines, however, she was already taking, and continued to take, other prescription pain medication. Tr. 454, 603, 667. Although conservative treatment can undermine allegations of debilitating pain, it "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Carmickle, 533 F.3d at 1162. Here, Plaintiff suffered adverse side effects from a number of medications, and she had allergic reactions to several other medications including: Psuedoephrine, Codeine, Sulfa Drugs, Vicodin, Oxycodone, Cymbalta, and Gabapentin. Tr. 45, 668, 672, 682, 689, 717. The record also reflects that Plaintiff was experiencing financial hardships and was not able to afford some of her prescriptions. Tr. 667. Inability to afford treatment is a good reason for not seeking more aggressive treatment. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007). Accordingly,

Plaintiff's purported conservative treatment is not a clear and convincing reason to discount her subjective symptom testimony.

Even assuming *arguendo* that Plaintiff's conservative treatment regarding migraines and sleep apnea did constitute a clear and convincing reason to discredit Plaintiff, such would only impugn Plaintiff's testimony regarding those particular impairments. As discussed above, SSR 16-3p makes clear that the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. The ALJ's credibility determination is limited to the "evidence in the record that is relevant to the individual's impairments" and the "focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p. Plaintiff alleged disability due to fibromyalgia, chronic pain, anxiety, PTSD, and obesity; Plaintiff did not claim that her disability was caused by migraines or sleep apnea. Tr. 90. Under SSR 16-3p, it would be impermissible to find that Plaintiff's conservative treatment of her migraines or sleep apnea reduced her credibility regarding fibromyalgia, chronic pain, anxiety, PTSD, and obesity, because such a finding would be based on a determination of Plaintiff's character for truthfulness. Therefore, Plaintiff's conservative treatment, at most, reduces her credibility only as to her migraines and sleep apnea, but not her other impairments.

## C. Effective Treatment

The Commissioner argues that Plaintiff's anxiety was treated effectively. Def.'s Br. at 8. The effectiveness of treatment is a relevant factor in determining the severity of Plaintiff's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Commissioner also argues that "Plaintiff did not challenge this finding; thus, any subsequent challenge is waived." Def.'s Br. at 8 (citing Bray v. Commissioner, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009)). It is not clear, however, whether the ALJ actually made such a finding. The ALJ did not explicitly find that Plaintiff's anxiety treatment was effective. Instead, he merely noted that in July, 2013, Plaintiff had

undergone therapy to address triggers of anxiety as well as panic and she had been able to use coping tools to deal with stressors. Tr. 23, 621–22. Those assertions only serve as evidence that Plaintiff was undergoing treatment, not necessarily that it was effective. Furthermore, even if the ALJ was implying that Plaintiff had received effective treatment for her anxiety, such an assertion is not supported by the record. Although Plaintiff's counselor observed that she had been using coping tools to deal with stressors, this was not an indication that Plaintiff's anxiety was totally under control. In fact, at that point in time, Plaintiff had just experienced a double miscarriage of twins and her counselor noted that Plaintiff still had high levels of anxiety from "PTSD triggers and her distress over miscarriages." Tr. 622. Additionally, Plaintiff had a long history of chronic anxiety, dating back to at least 2005; her doctors noted that her anxiety was severe, she suffered from panic attacks, and she had been prescribed several medications over the years. Tr. 393, 395, 449, 458, 460, 551, 594, 603, 625. Moreover, Plaintiff continued to report high levels of anxiety after July, 2013—the point in time the Commissioner alleges Plaintiff had received effective treatment. Tr. 621, 722. Therefore, the supposed effective treatment is not a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony.

**D. Activities of Daily Living**

A claimant's activities of daily living can be used to discredit a claimant in two ways: either the activities can contradict the claimant's other testimony, or the activities can meet the threshold for transferable work skills. Orn, 495 F.3d at 639. Here, the ALJ found Plaintiff not credible for the first reason, alleging Plaintiff's activities contradict her other testimony. Tr. 23. The ALJ found that the treatment record reflects "a more active lifestyle than [Plaintiff] alleges" and "[h]er allegations that she must lie down most of the day are not consistent with her daily activities." Tr. 23. The ALJ's contention is not supported by the record. Although Plaintiff stated that she lies down "for the majority of the day if [she] can," she clarified that on bad days she lies

down for 8-10 hours and on good days she lies down for 4-6 hours. Tr. 58. Plaintiff's activities are not inconsistent with her claim. The ALJ relied on the fact that in January, 2013, Plaintiff was "seeing her children regularly, was president of her [group home], and was going to school part-time." Tr. 23. The fact that Plaintiff was "seeing her children regularly" is not incompatible with Plaintiff lying down much of the day. Additionally, Plaintiff explained that being president of her group home was actually an easy job that only required her to preside over one weekly meeting that lasted 45 minutes to an hour. Tr. 59–60. With regard to the community college classes, Plaintiff was enrolled in only two classes, one of which only met once per week. Tr. 57. Plaintiff's small course load and minimal activities are not necessarily inconsistent with her need to lie down 4-6 hours a day, or even 8-10 hours a day.

The ALJ also noted that Plaintiff helped her cousin by driving her around and helping with a new baby. Tr. 23, 579, 581. The information in the record regarding Plaintiff's assistance to her cousin is limited to a few casual remarks made to her counselor. Tr. 579, 581. The extent to which Plaintiff was assisting her cousin on a day-to-day basis is unclear, and it appears from the record that such assistance was a temporary arrangement. Indeed, there is no evidence that it lasted for more than a few weeks. A vague reference to Plaintiff's ability to "help" her cousin during a short timeframe is insufficient to discredit Plaintiff's subjective symptom testimony because fibromyalgia must be considered on a "longitudinal record," given that fibromyalgia symptoms "can wax and wane." SSR 12-2p; see Garrison, 759 F.3d at 1017 (citing Holohan, 246 F. 3d at 1205) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

In addition, the ALJ relied on a comment made by Plaintiff's counselor that Plaintiff led an

"active life." Tr. 23. The Commissioner argues that leading "an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments" undermines credibility. Bray, 554 F.3d at 1227. In Bray, the claimant's credibility was undermined because she claimed she suffered from debilitating shortness of breath, but she was able to walk her dogs, worked for two years as a caregiver, and continued to smoke cigarettes. Id. at 1221, 1227. Here, none of Plaintiff's claims are contradicted by her activities. Furthermore, "[t]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). Moreover, although Plaintiff's counselor stated that Plaintiff "seems to have an active life," this observation was primarily based on Plaintiff "helping her cousin." Tr. 581. As discussed above, Plaintiff's assistance to her cousin appears to have been quite short-lived and even during that period, the extent of Plaintiff's involvement and activity level is unclear. Thus, Plaintiff's supposed "active lifestyle" is not a clear and convincing reason to discredit her testimony.

The ALJ also found that Plaintiff's ability to attend classes, live with a friend, and serve as president of her group home, was inconsistent with her claimed "social limitations." Tr. 23. However, the fact that Plaintiff was able to go to class, have a roommate, and preside over a 45 minute meeting, is not inconsistent with claims of having some social limitations.

Finally, the Commissioner argues that "if evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ pointed to activities that amount to a few hours per week and alleged that such activities were inconsistent with Plaintiff's claims about lying down. Plaintiff testified that she lies down 4-10 hours per day, depending on how she is

feeling. Tr. 58. It is unclear how the minimal activities cited by the ALJ would preclude Plaintiff's claims. The ALJ's findings must be supported by substantial evidence in the record. 42 U.S.C. § 405(g); see also Andrews, 53 F.3d at 1039. Here, the ALJ's finding that Plaintiff's claims are contradicted by her activities is not supported by substantial evidence. Accordingly, Plaintiff's activities of daily living are not a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

**E. Unemployment Claim**

The ALJ found that Plaintiff claimed unemployment, "indicating she felt able to work." Tr. 23. The Commissioner argues that the "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). Although the *continued receipt* of unemployment benefits can undermine a claimant's credibility, here, Plaintiff was merely applying for benefits. Tr. 578. There is no evidence in the record that Plaintiff ever received unemployment benefits, in fact, although Plaintiff told her counselor that she was working on getting unemployment, there is no evidence in the record that Plaintiff ever actually applied. Furthermore, contrary to the ALJ's finding, it is clear from the record that Plaintiff did not feel able to work. Tr. 578 ("[Plaintiff] said she is still working on getting on TANF and has to sign up for the JOBS program. She has some concern about managing her pain, but did have her doctor limit her to 10 hours a week.") Therefore, Plaintiff's attempt to obtain unemployment benefits is not a clear and convincing reason to reject her subjective symptom testimony.

**F. Attempting to Find Employment**

The ALJ found that in October, 2012, Plaintiff reported she was trying to find a job. Tr. 23, 649. However, the mere fact that Plaintiff attempted to find a job is insufficient to discredit her. Webb, 433 F.3d at 688 ("That [the claimant] sought employment suggests no more than that

he was doing his utmost, in spite of his health, to support himself.") Here, like in <u>Webb</u>, Plaintiff was just trying to do her best to support herself. In fact, it appears that at the time in question, Plaintiff was struggling to pay rent. Tr. 649. Thus, Plaintiff's attempt to find employment is not a clear and convincing reason to discount her credibility.

## II. <u>Evaluation of Medical Opinion Evidence</u>

As noted above, Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Wang and erroneously credited Dr. Markus' opinion over Dr. Wang's. The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing the ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992).

The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. <u>Tommasetti</u>, 533 F.3d at 1040. An ALJ may also "set forth specific, legitimate reasons for crediting one medical opinion over another." <u>Garrison</u>, 759 F.3d at 1012.

**A. Dr. Jeffrey Wang**

The ALJ only gave "some" weight to Dr. Wang's opinion, finding that the "degree of limitations described is not entirely supported by the medical record, including his treatment notes." Tr. 24. The ALJ supported his conclusion, in part, based on his finding that there was no evidence of complaints of edema and no evidence Dr. Wang recommended that Plaintiff elevate her legs. Tr. 24. However, the ALJ mischaracterized the record, and the Commissioner concedes that the "ALJ erroneously concluded there was 'no evidence of edema' in Dr. Wang's treatment notes and 'no evidence he recommended elevating the legs in his treatment notes.' " Def.'s Br. at 12 (quoting Tr. 24.).

Nevertheless, the Commissioner contends that such error was harmless because the edema was related to a twisted ankle and resolved shortly thereafter. Def.'s Br. at 12; Tr. 396–97, 458, 460, 483. The Commissioner also mischaracterizes the record. Plaintiff's edema was not related to a twisted ankle because the swelling was not contemporaneous. Tr. 398–401 (In October of 2010, Plaintiff fell and twisted her right knee—rather than her ankle. At the time, the doctor noted that there was "[n]o obvious increased swelling" and Plaintiff did not report swelling until five months later.). Furthermore, Plaintiff reported edema in both legs. Tr. 289, 394, 396–97, 458. In addition, the edema did not resolve shortly thereafter, in October, 2011—one year after the injury to her right knee—Plaintiff reported edema in both legs. Tr. 458. Additionally, in September of 2013, nearly three years after the injury, Dr. Thompson observed edema and joint swelling upon his examination of Plaintiff. Tr. 718. Dr. Wang has repeatedly recommended that Plaintiff elevate her legs to reduce her edema. Tr. 396, 458, 702. As recently as October, 2013, Dr. Wang reported that "elevation helps her edema." Tr. 702.

The Commissioner further argues that the error was harmless because Plaintiff alleged no limitation in connection with the edema. However, in crafting the RFC, the ALJ failed to include

Dr. Wang's functional limitation that Plaintiff would need to elevate her legs. Thus, the error was not harmless.

Next, the ALJ found that the "degree of [Dr. Wang's] limitations [was] not entirely supported by the medical record, including his treatment notes." Tr. 24. However, the ALJ subsequently contradicted himself, finding that the "exertional limitations [Dr. Wang] describes are generally *supported by the treatment record* and are consistent with the residual functional capacity." Tr. 24 (emphasis added). The ALJ only specifically addressed one limitation, asserting that "the record does not support a need for frequent absences or breaks." Id. The ALJ did not explain his reasoning or cite to the record, and merely concluded that the record does not support Plaintiff's need for frequent absences or breaks. However, the record does support a need for frequent absences and breaks. On the day that Plaintiff has two classes, she has to go home and lie down in between classes and Plaintiff has to stop and take breaks when she walks from her car to the classroom, which often results in her being late to class. Tr. 57, 67–68, 718, 722 (Dr. Wang determined that Plaintiff was suffering from "debilitating fatigue" and Dr. Thompson observed that Plaintiff was experiencing joint swelling and extremity weakness.) Plaintiff also testified that on bad days she needs to lie down for 8-10 hours and she would miss class twice per month due to her chronic pain and anxiety. Tr. 46, 58, 66, 621, 718 (Dr. Thompson reported that Plaintiff was suffering from back pain, joint pain, and neck pain. Licensed Professional Counselor ("LPC") Bednarz observed that Plaintiff has had problems with "extreme pain" and "a lot of anxiety."). Thus, the record does support Plaintiff's need for frequent absences or breaks.

The ALJ also asserts that Dr. Wang "provide[d] little supporting explanation for the described limitations." Tr. 24. Dr. Wang provided some supporting explanations in his initial response, and he elaborated in his second response. Tr. 701–03, 722–23. Dr. Wang clarified that Plaintiff's chronic pain causes "debilitating fatigue" and that Plaintiff's morbid obesity

exacerbates her chronic pain. Tr. 722. Furthermore, Dr. Wang noted that Plaintiff is "easily overwhelmed with [the] stressors in her life" and she suffers from "chronic anxiety with panic attacks." Tr. 722. Additionally, as discussed above, there is ample evidence in the treatment record supporting Dr. Wang's limitations. Therefore, the purported lack of support from the medical record was not a legitimate reason for rejecting Dr. Wang's opinion.

Finally, the Commissioner asserts that the RFC limitations are "consistent with Dr. Wang's opinion that Plaintiff had physical and mental limitations, even though the ALJ did not accept every aspect of Dr. Wang's opinions." Def.'s Br. at 11. However, in professing to adopt an RFC consistent with Dr. Wang's opinion, but failing to include Dr. Wang's precise limitations, the ALJ effectively rejected the doctor's opinion. See Kimble, 2017 WL 3332256, at *4 (ALJ erred by purporting to accept a doctor's opinion without expressly including the doctor's proposed limitation in the RFC); Bobbitt v. Colvin, No. 3:13-cv-01320-HZ, 2014 WL 2993738, at *9 (D. Or. Jul. 1, 2014) (same). The Commissioner further argues that the ALJ does not err when he does not reject evidence, but reasonably interprets it as not supporting a disability finding. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). In Orteza, the Court held that the ALJ reasonably interpreted a doctor's ambiguous statement. Id. (Holding that the ALJ properly concluded the doctor's statement that the claimant could "adapt to a 'sedentary type job' " did not mean that claimant could *only* perform "sedentary work."). Here, however, Dr. Wang left nothing to interpretation in finding that Plaintiff's symptoms would cause her to miss four days of work per month. Tr. 702. Dr. Wang also concluded that on most days, Plaintiff's symptoms would worsen over the course of a work day and she would be unable to complete her work. Tr. 702. Dr. Wang unambiguously concluded that Plaintiff could not perform any work on a regular and continuing basis. SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). In order to reject Dr. Wang's opinion, the ALJ needed to provide

specific, legitimate reasons and he failed to do so. Accordingly, the ALJ improperly rejected Dr. Wang's medical opinion.

**B. Dr. Markus**

The ALJ gave great weight to Dr. Markus' opinion because Dr. Markus had the opportunity to examine Plaintiff, he noted concerns regarding control point tenderness, his opinion was consistent with other evidence including the medical records and Plaintiff's activity level, and he provided extensive supporting explanations for his assessment. Tr. 23. An ALJ may "set forth specific, legitimate reasons for crediting one medical opinion over another." Garrison, 759 F.3d at 1012.

The first reason the ALJ cited for giving great weight to Dr. Markus was that Dr. Markus had the opportunity to examine the Plaintiff. Tr. 23. This is a confusing reason for giving Dr. Markus more weight than Dr. Wang, considering Dr. Markus only examined Plaintiff once for twenty-five minutes, whereas Dr. Wang examined Plaintiff numerous times over the course of at least five years. Tr. 393–94, 396–97, 445–47, 454–70, 475–77, 602–04. Therefore, the fact that Dr. Markus had one opportunity to examine Plaintiff, is not a specific, legitimate reason for crediting Dr. Markus' opinion over Dr. Wang's.

The ALJ also gave great weight to Dr. Markus' opinion because Dr. Markus "noted concerns regarding control point tenderness." Tr. 23. This rationale, suggests that Dr. Markus' opinion received great weight in part *because* it raised concerns about Plaintiff's alleged symptom testimony. Such is not a valid reason for giving great weight to a doctor's opinion.

The ALJ also noted that Dr. Markus provided "extensive supporting explanations" for his assessment. However, a review of the record reveals that Dr. Markus merely filled out the standard Social Security Administration Medical Source Statement check-box form and included the standard examination report. In the check-box portion of the report Dr. Markus included an

additional four sentences of explanation. Tr. 704–09. A close reading of Dr. Markus' examination report reveals that it consists almost entirely of a summary of the facts, followed by Dr. Markus' conclusions. Tr. 710–15. In the entire report, there is only one brief paragraph that could be characterized as "explanations." The paragraph explains the fibromyalgia diagnosis, but is internally inconsistent. Although Dr. Markus diagnosed Plaintiff with fibromyalgia, he then explained that "today's exam would not be consistent with classic fibromyalgia." Tr. 714. Accordingly, Dr. Markus' purported "extensive supporting explanations" do not constitute a specific, legitimate reason for crediting Dr. Markus over Dr. Wang.

Moreover, Plaintiff argues that the ALJ's reliance on Dr. Markus' opinion is further called into question by the fact that Dr. Markus failed to address any of Plaintiff's impairments aside from fibromyalgia. Most notably, Dr. Markus failed to diagnose Plaintiff with osteoarthritis in her knee or with morbid obesity. Pl.'s Br. at 13. Plaintiff had a well-documented history of osteoarthritis in her right knee, including MRI imaging. Tr. 93, 393, 396, 439–40, 446, 609, 682. Dr. Markus noted that plaintiff was 5 feet tall and weighed 336 pounds, but failed to diagnose her morbid obesity. Tr. 712. A BMI of 30.0 or above is considered obese and based on Plaintiff's height and weight she had a BMI of 65.61. SSR 02-1p; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.G.2.b.

Additionally, Plaintiff alleges that Dr. Markus' clinical findings do not support his conclusion with regard to Plaintiff's handling and fingering limitations. Dr. Markus observed that "several minutes" of repetitive activities with her hands resulted in increased pain, a "significant slowing" of Plaintiff's activities, and increased weakness. Tr. 713. Therefore, Plaintiff argues, Dr. Markus' conclusion that Plaintiff could frequently handle and finger, which would require 20-40 minutes per hour of bilateral hand activity, was not supported by his clinical findings. See Dictionary of Occupational Titles, (4th ed. 1991) Appendix C. The VE did indicate that a

"frequent" limitation regarding handling and fingering would allow for gainful employment, however, an "occasional" limitation would preclude gainful employment. Tr. 82. Although, Dr. Markus' conclusion that Plaintiff can frequently handle and finger does appear to be inconsistent with the doctor's clinical findings, the Commissioner is correct that the reviewing court may not reweigh the evidence and rewrite the limitation as "occasional" instead of "frequent." See Batson, 359 F.3d at 1193. Nevertheless, the inconsistency in Dr. Markus' opinion undermines the ALJ's decision to credit Dr. Markus' opinion over Dr. Wang's.

The ALJ also gave Dr. Markus' opinion great weight because it was consistent with the medical evidence in the record and Plaintiff's activities. Tr. 24. Dr. Markus concluded that Plaintiff could sit eight hours, stand four hours, and walk four hours of an eight-hour day. Tr. 22–23, 714. Nothing in the medical record indicates that Plaintiff was capable of such sustained activities. With regard to standing and walking, Plaintiff experiences pain in her right knee due to osteoarthritis, that pain is worsened by walking, and she struggles to walk for even short distances. Tr. 67–68, 682. Furthermore, Plaintiff suffers from "debilitating fatigue" and has been diagnosed as morbidly obese. Tr. 397–98, 458, 468–69, 470, 672, 682, 722. There is no evidence in the record that Plaintiff engages in any activities that would require her to be on her feet for four hours in a day. With regard to sitting, Plaintiff's uncontradicted testimony is that she struggles to sit even for the duration of one class period. She is only able to get through it because it is broken up by 1-2 breaks that are 10-15 minutes long, the students get up and move around sometimes during class, she has a special ergonomic chair prescribed by her doctor, and she is able to put her feet up. Tr. 56–57, 65–66, 665. Plaintiff could not even get through the hearing without needing to stand up for a while. Tr. 55. Additionally, Plaintiff is not able to sit in the same position for more than 15-20 minutes. Tr. 61, 320. On days that Plaintiff has two classes, she has to go home and lie down in between classes. Tr. 57. The ALJ's assertion that Dr. Markus' opinion is consistent with

the medical evidence and Plaintiff's activities is not supported by the record, and therefore, is not a specific, legitimate reason for crediting Dr. Markus' opinion over Dr. Wang's. Thus, the ALJ improperly credited Dr. Markus' opinion over Dr. Wang's.

## III. Lay Testimony

Plaintiff assigns error to the ALJ's evaluation of the lay testimony of Ms. Madina Williams, Plaintiff's aunt. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing Dodrill, 12 F.3d at 918–19). In order to reject such testimony, the ALJ must provide "reasons germane to each witness." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). "Further, the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (citation omitted).

The ALJ found that Ms. Madina Williams' testimony was "partially credible" and gave it "some weight," but the ALJ determined that the "severity described was not fully supported by the record." Tr. 23. The ALJ also found that her statements appeared to be primarily based on Plaintiff's self-report of symptoms which were not fully credible. Tr. 23. The ALJ never articulated which parts of Ms. Madina Williams' testimony were credible and which were not. The Commissioner asserts that the ALJ need only provide "arguably germane reasons" to reject lay testimony and that the ALJ does not need to "clearly link his determinations to those reasons." Lewis, 236 F.3d at 512. In Lewis, the ALJ specifically cited to several instances where the witness's testimony was inconsistent with the claimant's testimony, whereas here, the ALJ failed to specify in what way the record did not support Ms. Madina Williams' testimony. Id. Furthermore, rejecting lay witness testimony about symptom severity merely because it is not supported by the medical record "violates SSR 88-13, which directs the ALJ to consider the

testimony of lay witnesses [even] where the claimant's alleged symptoms are *unsupported* by her medical records." <u>Smolen</u>, 80 F.3d at 1289; <u>see</u> SSR 88-13. Therefore, the ALJ erred in rejecting Ms. Madina Williams' lay testimony.

The Commissioner argues that the error was harmless because Ms. Madina Williams' testimony was similar to Plaintiff's. Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony may be harmless error. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1122 (9th Cir. 2012). Here, the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony, as such, the error in rejecting Ms. Madina Williams' testimony was not harmless.

## IV. <u>Evaluation of Plaintiff's Obesity</u>

Plaintiff alleges that the ALJ erred in evaluating her obesity. To comply with SSR 02-1p the ALJ must have "consider[ed] the effects of [the claimant's] obesity not only under the listings but also . . . at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1p. Here, the ALJ did not address Plaintiff's obesity in the context of the RFC. The Commissioner asserts that the ALJ's RFC finding took into account Plaintiff's obesity by limiting her to sedentary work; however, the ALJ did not articulate such a rationale. The Commissioner next argues that any error was harmless because Plaintiff did not point to any specific obesity-related functional limitations that the ALJ should have included in the RFC. Nevertheless, the Social Security Regulations provide that the Commissioner must "also consider the possibility of coexisting or related conditions, especially as the level of obesity increases." SSR 02-1p. Here, Plaintiff was morbidly obese, weighing upwards of 330 pounds with a BMI ranging from 54-65, and Dr. Wang noted that Plaintiff's obesity "exacerbates" her other impairments. Tr. Tr. 397–98, 458, 468–69, 470, 672, 682, 712, 722. Had the ALJ properly

considered Plaintiff's obesity, he may have found that it would have increased the severity of her other impairments.

The Social Security Regulations additionally provide that "[O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity."  SSR 02-1p. Here, Dr. Wang determined that Plaintiff's combined impairments would impede her ability to do sustained work activities; specifically, she would be absent four days per month and most days she would be unable to work for a full eight hours. Tr. 702. The ALJ, in his RFC determination, failed to consider how Plaintiff's obesity could have impacted her ability to do sustained work activities. Thus, the error was not harmless because it cannot be said that the error was "inconsequential to the ultimate nondisability decision." Molina, 674 F.3d at 1115.

**V. Remand**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court follows the "three-part credit-as-true standard." Garrison, 759 F3d at 1020. Under this standard the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further administrative proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be

required to find the claimant disabled on remand. Id. If a court concludes that a Plaintiff meets the three criteria of the credit-as-true standard, then the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021 (citations omitted).

Here, the first requisite is met. As discussed above, I conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence and that his decision contained errors of law. As to the second requisite, on this record, I find that the record is fully developed and further administrative proceedings would serve no useful purpose. To determine whether the record is fully developed, the court looks to whether there are "*significant factual conflicts* in the record between [the claimant's] testimony and objective medical evidence." Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) (emphasis added). Here, although the ALJ relied on Dr. Markus' opinion in finding that Plaintiff was capable of sedentary work, Dr. Markus only considered Plaintiff's fibromyalgia and did not assess the effects of Plaintiff's other impairments. Dr. Wang was Plaintiff's treating physician for over five years and he provided a comprehensive assessment of Plaintiff's abilities based on the combined effects of all her impairments, including: morbid obesity, chronic pain, right knee osteoarthritis, chronic anxiety, PTSD, panic disorder, and fibromyalgia. Tr. 393–94, 396–97, 445–47, 475–77 454–70, 602–04, 702, 722.

Furthermore, Dr. Wang's opinion is consistent with treating physician Dr. Thompson's opinion, which noted that Plaintiff was suffering from back pain, joint pain, joint swelling, extremity weakness, and anxiety. Tr. 718. Dr. Wang's opinion is also consistent with the observations of treating Physician's Assistant Erik Bates, who noted Plaintiff's morbid obesity, and treating counselor Bednarz who reported Plaintiff's struggles with anxiety, panic attacks, and

PTSD. Tr. 400–01, 472, 622, 625. Additionally, Dr. Wang's opinion is consistent with Plaintiff's testimony as well as Ms. Madina Williams' lay testimony. Dr. Wang determined that Plaintiff would miss four days of work per month due to her combined impairments; however, Dr. Markus did not address whether Plaintiff's impairments would cause her to be absent from work. Tr. 702, 704–15. The crucial question is the extent to which Plaintiff's *combined impairments* would interfere with her ability to sustain work activities on a "regular and continuing basis." SSR 96-8p. Accordingly, further administrative proceedings would not serve "a useful purpose" because the "crucial questions" have been resolved. See Brown-Hunter v. Colvin, 806 F.3d 487, 496 (9th Cir. 2015); Treichler, 775 F.3d at 1101, 1105. Thus, there is no significant conflict between Plaintiff's testimony and the objective medical record. Treichler, 775 F.3d at 1105.

As to the third requisite, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand because Dr. Wang determined that Plaintiff would miss four days of work per month and the VE testified that "[a] person who would miss two or more days per month on a consistent basis would be precluded from gainful activity." Tr. 72, 702.

If a court concludes, as in this case, that a Plaintiff meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1020–21 (citations omitted). Here, considering the record as a whole, I conclude that there is no reason for serious doubt as to whether Plaintiff is disabled. See Id. at 1021. As such, I have no reservation crediting the erroneously discredited testimony as true and remanding this case for immediate calculation and payment of benefits.

**<u>Conclusion</u>**

For the reasons discussed above, the Commissioner's ultimate decision was not based on substantial evidence and free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED for immediate calculation and payment benefits.

DATED this <u>23rd</u> day of <u>October</u>, 2017

<u>/s/ John Jelderks</u>
John Jelderks
U.S. Magistrate Judge